UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARTURO CONTRERAS-LOMELI,

        Plaintiff,                                Case No. 2:25-cv-12826

v.                                           Honorable Thomas L. Ludington
                                                   United States District Judge
KEVIN RAYCRAFT, et al.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING PETITIONER'S WRIT OF HABEAS CORPUS**

On September 6, 2025, Petitioner Arturo Contreras-Lomeli, a Mexican citizen, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. He alleges that he is unlawfully detained under the Immigration and Nationality Act (INA). According to the United States government, Petitioner is unlawfully present in the United States despite having lived here for the better part of twenty years.

Recently, things changed for Petitioner when he was arrested for driving with an expired license. After this arrest, based on a new Department of Homeland Security policy issued on July 8, 2025, the federal government detained Petitioner without a bond hearing pending an immigration proceeding for his removal. But Petitioner asserts that he is guaranteed a bond hearing under 8 U.S.C.§ 1226. Respondents argue that detention is mandatory under 8 U.S.C. § 1225.

For the reasons explained below, Petitioner is correct: § 1226—not § 1225—applies to Petitioner's detention, rendering his detention without a bond hearing unlawful. Thus, the Petition will be granted. As a result, Respondents will be directed to immediately release Petitioner or conduct a bond hearing within seven (7) days of this order.

I.

Petitioner Arturo Contreras-Lomeli is a Mexican citizen who, since 2003, has resided in the United States for over two decades—most recently in Detroit, Michigan. ECF No. 1 at PageID.13. The record reveals little about Petitioner's life, but it does not appear that he has been in significant trouble. ECF No. 4 at pageID.35. Indeed, it appears that since being here, Petitioner has only a conviction for driving while impaired in 2004, which landed him a fine in excess of $1,200. ECF No. 4 at pageID.35.

On August 11, 2025, the Canton Police Department arrested Petitioner for driving with a Michigan Driver's License that expired in 2009.[1] ECF No. 4-2 at PageID.63. After this arrest, Canton Police contacted the Detroit Field Office of Enforcement and Removal Operations (ERO), and the next day, he was detained by federal authorities. *Id.* To that end, Petitioner was placed into removal proceedings with the issuance and filing of a Form I-862, Notice to Appear (NTA), and charged with inadmissibility under §§ 212(a)(6)(A)(i), (7)(A)(i)(I) of the Immigration and Nationality Act (INA). *Id.* at PageID.63–64. ERO Detroit did not provide him a bond hearing for these charges because they believe him to be an "applicant for admission to the United States seeking admission . . . not clearly and beyond doubt entitled to admission." *Id.* at PageID.64.

On August 13, 2025, Petitioner requested a bond redetermination hearing before the Detroit Immigration Court. *Id.* An immigration judge conducted a hearing on August 27, 2025, but

---

[1] While not at issue in the case, Petitioner contends that he had a valid foreign driver's license at the time of his arrest. ECF No 1 at PageID.13. The State of Michigan's government website seemingly indicates that drivers from "recognized treaty countries" can legally drive on a foreign driver's license if they are either (a) printed in English, or (b) accompanied by an English translation. *See* MICHIGAN.GOV, *What You Need to Know About Foreign Driver's Licenses*, https://tinyurl.com/MichForeignLicense (last visited October 9, 2025). Mexico is considered a "treaty country." *Id.*

determined that Petitioner was an "applicant for admission under" 8 U.S.C. § 1225.[2] *Id.* at PageID.65. Thus, the immigration judge held that the court did not have jurisdiction to consider bond under the statutory framework. *Id.* To be sure, the immigration judge's holding aligns with a new Department of Homeland Security (DHS) policy issued on July 8, 2025. This policy instructs all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) subject to mandatory detention under 8 U.S.C. § 1225(b)(2)—that is, anyone who, like Petitioner, initially entered the United States without inspection. ECF No. 1 at PageID.2.

On September 6, 2025, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. Petitioner asserts that the Respondents—several United States government authorities—violated the INA and the Fifth Amendment Due Process Clause. *See id.* at PageID.15–16. He argues that, as a noncitizen residing in the United States charged for allegedly entering the country without inspection, 8 U.S.C. § 1226(a) allows for his release on conditional parole or bond pending removal hearings, after a detention hearing to evaluate his risk of flight and dangerousness. *See generally* ECF Nos. 1, 5. Respondents assert that under 8 U.S.C. § 1225(b)(2)(A), Petitioner is properly detained because he falls in a category of noncitizens that the statute mandates be detained pending removal proceedings. *See generally* ECF No. 4. Petitioner seeks immediate release from custody or, in the alternative, a bond hearing and asks this Court to declare that 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A), is the appropriate statute that governs his detention. ECF No. 1 at PageID.17.

---

[2] While some record materials refer § 235 of the INA, it is codified at 8 U.S.C. § 1225.

## II.

Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). When entertaining an application for a writ of habeas corpus, courts must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled" to habeas relief. 28 U.S.C. § 2243.

## III.

### A.

Before determining the merits of the Petition, threshold issues must be addressed. To begin, this Court must decide if all Respondents are proper parties. They are not.

A writ of habeas corpus may only be "directed to the person having custody of the person detained." 28 U.S.C. § 2243. "Historically, the question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who has power over the petitioner and ... on the convenience of the parties and the court." *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003) (citing *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998)). "As a general rule, a petitioner should name as a respondent to his habeas corpus petition 'the individual having day-to-day control over the facility in which [the alien] is being detained.'" *Id.* (citing *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000)). A detained noncitizen filing a habeas petition should generally name as a respondent the person exercising control over their affairs, which is the relevant ICE field office director.[3] *Id.* at 320.

---

[3] While *Ashcroft* notes that the "INS District Director" is the proper person habeas petitioners should name in immigration habeas petitions, the INS (Immigration and Naturalization Services) was abolished in 2003. Immigration and Naturalization Service (INS), CORNELL LAW SCHOOL, https://www.law.cornell.edu/wex/immigration_and_naturalization_service_(ins)#:~:text=Immigration%20and %20Naturalization%20Service%20(INS,a%20petition%20to%20the%20USCIS. (last visited October 9,

Because Petitioner acknowledges that Acting Director of the Detroit Field Office of ICE's Enforcement and Removal Operations Division Kevin Raycraft is his "immediate custodian," ECF No. 1 at PageID.6, he is the only proper Respondent. In fact, Petitioner does not oppose Respondents' request to dismiss everyone but Director Raycraft—provided that this Court retains jurisdiction to grant meaningful habeas relief. ECF No. 5 at PageID.91. Therefore, this Court will dismiss all Respondents but Respondent Raycraft.

**B.**

One more threshold question remains before addressing the Petition's merits. To that end, Respondent Raycraft contends that Petitioner must exhaust his administrative remedies before he may proceed with his Petition. ECF No. 4 at PageID.40. Not so.

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* Here, no statute or rule requires administrative exhaustion.

Even so, at times, courts read exhaustion requirements into a statute. These "[e]xhaustion requirements not written into the text of the statute are prudential." *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025) (citing *Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994)). Prudential exhaustion is a "court-created" doctrine. *Perkovic*, 33 F.3d at 619. The Sixth Circuit has not decided whether courts should apply prudential exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention. *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25CV01621, 2025 WL 2444114, at *8

---

2025). It has since been replaced with the Immigration and Customs Enforcement (ICE), Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS). *Id.*

(N.D. Ohio Aug. 25, 2025). And Sixth Circuit judges are skeptical of exhaustion requirements not written in the text of a statute. *See Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 900–01 (6th Cir. 2020) (Thapar, J., concurring) (questioning the continued validity of certain atextual exhaustion requirements and observing that they rest on "shaky foundations"). But some courts in this circuit have applied Ninth Circuit precedent in determining whether prudential exhaustion should apply in this context. *See e.g., Lopez-Campos*, 2025 WL 2496379, at *4–5; *Villalta v. Greene*, No. 4:25-cv-01594, 2025 WL 2472886, at *2 (N.D. Ohio Aug. 5, 2025); *Hernandez*, 2025 WL 2444114, at *8–10.

But even assuming the Ninth Circuit's approach applies, a court can waive exhaustion requirements in circumstances where (1) the legal question is "fit" for resolution and delay means hardship, or (2) when exhaustion would prove "futile." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Both scenarios exist here, so this Court finds that waiving any prudential exhaustion requirements is appropriate.

1.

Start with the fitness of the legal question at issue. The Petition poses the issue of whether §1225(b)(2)(A) or §1226(a) applies to Petitioner's detention. *See generally* ECF No. 1. To determine which statutory provision applies, this Court must address a pure legal question—one of statutory interpretation—which is right in a federal court's wheelhouse. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citing *Marbury v. Madison*, 1 Cranch 137, 177 (1803)). The issue is thus ripe for resolution.

Next, Petitioner faces significant hardship should this Court choose to require him to advance an appeal with the Board of Immigration Appeals (BIA)—his sole administrative remedy. ECF No. 5 at PageID.103–104. Courts may waive exhaustion requirements when an administrative remedy would be subject to an indefinite or unreasonable timeline. *McCarthy v. Madigan*, 503

U.S. 140, 147 (1992); *see also Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025). "Bond denial appeals 'typically take six months or more to be resolved at the BIA.'" *Pizarro Reyes*, 2025 WL 2609425, at *3 (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wa. 2025). And any "delays inherent" in the BIA's administrative process "would result in the very harm that the bond hearing was designed to prevent: 'prolonged' detention without due process during lengthy and backlogged removal proceedings." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation omitted); *see also Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *5 (D. Mass. July 7, 2025); *Pizarro Reyes*, 2025 WL 2609425, at *3; *Lopez-Campos*, 2025 WL 2496379, at *5. Forcing Petitioner to endure six months or more of potentially unlawful detention would thus cause him great hardship, supporting a waiver of administrative exhaustion requirements.

## 2.

Next, the futility of any appeal to the BIA is an independent reason to waive exhaustion. Waiver based on futility is appropriate when an administrative agency "has predetermined the disputed issue" by having a "clearly stated position" that the petitioner is not eligible for the relief sought. Cooper v. Zych, No. 09-CV-11620, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009); *see also McCarthy*, 503 U.S. at 148 (finding that an "administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it.").

Here, Respondent's agency already made its position clear *In re Hurtado,* 29 I. & N. Dec. 216 (BIA 2025). *In re Hurtado* rejected Petitioner's arguments, holding that §1225(b)(2)(A) applies to detainees in Petitioner's circumstances. Respondent acknowledges that *In re Hurtado* is not only binding on the immigration courts and rejected Petitioner's arguments, but also that

Petitioner is unlikely to obtain relief because of that decision, making any appeal available to Petitioner futile. ECF No. 4 at PageID.40–41. This futility thus further favors waiving exhaustion.

C.

Having resolved those threshold issues, turn to the Petition's merits. There is one issue in this case: which statutory provision governing the detention of noncitizens pending removal proceedings applies to Petitioner, §§1225 or 1226. Petitioner argues that §1225(b)(2)(A) does not apply to him because he is neither a recent arrival nor is he seeking admission. *See* ECF No. 1 at PageID.3. Rather, in his view, §1226 applies to noncitizens like him, who reside within the United States but are charged as inadmissible for having entered the country without inspection. *Id.* As explained below, the statutory text, structure of the statutory scheme, and history of the statute reveal that §1226 is the applicable governing provision. Thus, Petitioner is entitled to a bond redetermination hearing.

Start with the text. In statutory interpretation, the text reigns supreme: "the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). Courts must assign each word of the statute its "ordinary, contemporary, common meaning." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (internal citation omitted). Courts must also remember that "[s]tatutory language has meaning only in context." *Id.* (quoting *Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 545 U.S. 409 (2005)).

With these principles in mind, the text of §1225(b)(2)(A) reads:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission*

>is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.[4]

(emphasis added). While §1225(b)(2)(A) is a mandatory detention provision, §1226(a) is not:

>(a) Arrest, detention, and release
>
>>On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>>
>>*(1) may continue to detain the arrested alien;* and
>>
>>*(2) may release the alien on—*
>>
>>>(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . .

(emphasis added).

At first blush, the plain text of §1225(b)(2)(A) seemingly applies to Petitioner. Respondent argues that Petitioner is an "applicant for admission" as defined under 8 U.S.C. § 1225(a)(1), which deems any noncitizen "present in the United States who has not been admitted" to be an "applicant for admission. If Respondent is correct, every single person who has not been admitted legally into the United States, including Petitioner, is an applicant for admission and thus subject to § 1225(b)(2)(A) mandatory detention.

Respondent further argues that Petitioner is "seeking admission" under §1225(b)(2)(A) because "admission" is defined under the statute as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Thus, Respondent argues, whether Petitioner was "seeking admission" is based on whether he was seeking "lawful entry." *See* ECF No. 4 at PageID.43. Respondent points to two statutory provisions identifying noncitizens who are not seeking admission. The first are those noncitizens who

---

[4] The subsections in the first clause of the provision are not relevant to the case.

withdraw their applications for admission and "depart immediately from the United States," 8 U.S.C. § 1225(a)(4), and the second are those who agree to voluntarily depart instead of being subject to removal proceedings or before the completion of those proceedings. 8 U.S.C. § 1229c(a)(1). Under Respondent's reading, noncitizens present in the United States who have not been lawfully admitted and who do not agree to immediately depart are seeking "lawful entry" and seeking admission subject to §1225(b)(2)(A). *See* ECF No. 4 at PageID.44. Thus, Petitioner would also appear to fall under this, admittedly broad, definition of "seeking admission."

Section 1226 is far less specific; it can best be understood as a catchall authorizing the detention of noncitizens "[o]n a warrant issued by the Attorney General" pending removal proceedings. Petitioner, too, could fall within the application of this provision. In other words, based on the text alone, either statute could apply.

But statutory language only has meaning in context. *Kentucky*, 23 F.4th at 603; *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). In assessing the statutory context, start with the titles for each section. *See* A. SCALIA & B. GARNER, *Reading Law: The Interpretation of Legal Texts* 221 (2012) ("[T]itle[s] and headings are permissible indicators of meaning."). Section 1225(b)(1) indicates that it governs "Inspection of aliens *arriving* in the United States and certain other aliens who have not been admitted or paroled." (emphasis added). Thus, § 1225(b) can best be understood as a statute governing apprehension of noncitizens at the border. This reading is bolstered by the fact that § 1225 establishes an inspection scheme for when to *admit* a noncitizen into the United States. On the other hand, 8 U.S.C. § 1226 governs "Apprehension and detention of aliens"—which notably does not home in on entry at the border § 1225. While not binding, these titles are instructive and support applying § 1226 to Petitioner's detention. *See Dubin v. United States*, 599 U.S. 110, 120–21 (2023).

In addition, § 1225(b)(2)(B) provides exceptions to the mandatory detention provisions of (2)(A) for noncitizens who are "crewm[e]n" or "stowaway[s]"—both of which imply arrival at a port of entry. Thus, § 1225 appears to be limited to noncitizens detained at a port of entry, whereas § 1226 appears to be a catchall provision governing noncitizens who have already been present in the United States, like Petitioner. Based on this context shedding light on the meaning of the relevant provisions, then, § 1226 is the applicable provision here.

The structure of the statutory scheme also bolsters applying § 1226 rather than § 1225. "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *King v. Burwell*, 576 U.S. 473, 492 (2015) (quoting *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371(1988)). As the Supreme Court stated in *Jennings v. Rodriguez*, § 1226 sets out the "default rule" and "generally governs the process of arresting and detaining that group of aliens pending their removal." 583 U.S. 281, 288 (2018). And, while the Supreme Court acknowledged that §1225(b)(2)(A) is also a broad "catchall," the Court explained that this provision only applied to "all applicants for *admission* not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287 (emphasis added). Indeed, the Court framed §1225 as part of the "process of decision generally begin[ing] at the Nation's borders and ports of entry." *Id.*

While Respondent is correct that *Jennings* did not address whether noncitizens who have been in the United States for decades were "applicants for admission," *see* ECF No. 4 at PageID.53, the Supreme Court's explanation still supports that § 1226 is the primary statutory provision focused on the detention of noncitizens. In this way, § 1225 can best be understood as a limited provision governing removal proceedings of arriving noncitizens within the statutory scheme,

which does not apply to Petitioner, who was already present in the United States decades before his detention.

The statutory canon against surplusage also supports this interpretation. "It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

This year, Congress amended § 1226 with the Laken Riley Act. Pub. L. No.119-1, 139 Stat. 3 (2025). The Laken Riley Act added subsection § 1226(c)(1)(E) which states that the Attorney General must take into custody any noncitizen who are, among other groups, inadmissible under § 1182(a)(6)(A), which govern any "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." § 1182(a)(6)(A)(i). Because Petitioner was never "admitted" into the United States, he falls under this provision. The added provision under the Laken Riley act requires detention without bond for noncitizens under § 1182(a)(6)(A) *if* that noncitizen is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." § 1226(c)(1)(E)(ii). This newly created statutory provision would be superfluous if § 1225(b)(2)(A) also governed Petitioner's detention. *See Pizarro Reyes*, 2025 WL 2609425, at *5; *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025); *Lopez-Campos*, 2025 WL 2496379, at *8.

Respondent argues that, while there may be a redundancy between the §1225(b)(2) and the Laken Riley Act, there is no "positive repugnancy" between the two laws. *See* ECF No. 4 at

PageID.50 (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). "Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws." *Connecticut Nat. Bank*, 503 U.S. 249 at 253–254. But as discussed before, the conflicts between §1225(b)(2) and the Laken Riley Act are not mere "redundancies." Respondent argues that Petitioner has not committed any of the crimes that require mandatory detention under § 1226(c)(1)(E)(ii), thus §1225(b)(2) is not redundant as it applies to him. ECF No. 4 at PageID.52. But the canon against surplusage applies at the level of statutory meaning—not applied to the individual specifically. *See TRW Inc.*, 534 U.S. at 31 ("It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed . . . ").

And, even if Petitioner had committed one of the felonies listed under § 1226(c)(1)(E)(ii), he would already be mandated detention under §1225(b)(2), rendering this portion of the Laken Riley Act entirely moot. As other courts in the district have reasoned, "'[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless' and this Court, too, 'will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).'" *Lopez-Campos*, 2025 WL 2496379, at *8 (quoting *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)); *see also Pizarro Reyes*, 2025 WL 2609425, at *5.

As here, "[t]he canon against the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). Because Respondent's reading of §1225(b)(2)(A) would render key parts of the recently added Laken Riley Act moot, the Court must reject Respondent's interpretation.

Moreover, the legislative history behind §1226 implies that the statute applies to noncitizens like Petitioner, who now reside in the United States but entered without inspection. In *Rodriguez v. Bostock*, the court explained the history of § 1226's predecessor statute and held that it adopted its predecessor's authority to release noncitizens unlawfully present in the United States, like Petitioner, on bond:

> Before IIRIRA passed, the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. *See* 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability ... any [noncitizen] . . . may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding against a[ ] [noncitizen] already physically in the United States[.]' "). This predecessor statute, like Section 1226(a), included discretionary release on bond. *See* § 1252(a)(1) (1994) ("[A]ny such [noncitizen] taken into custody may, in the discretion of the Attorney General ... be continued in custody ... [or] be released under bond[.]"). Upon passing IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[ ] [noncitizen] who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same). Because noncitizens like Rodriguez were entitled to discretionary detention under Section 1226(a)'s predecessor statute and Congress declared its scope unchanged by IIRIRA, this background supports Rodriguez's position that he too is subject to discretionary detention.

*Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025). Indeed, courts within this district have come to the same conclusion. *See Pizarro Reyes*, 2025 WL 2609425, at *8.

Respondent points to the BIA's opinion *In re Hurtado*, where the BIA concluded that § 1225(b)(2)(A) covers inadmissible noncitizens who lived unlawfully in the United States for longer than two years without apprehension. 29 I&N Dec. 216 (2025). But this Court is not bound by it. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Respondent also points to *Torres v Barr*, where the Ninth Circuit stated that the intended purpose of IIRIRA was to close an anomaly "whereby immigrants who were attempting to lawfully

- 14 -

enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020). But *Torres* only covers the history of an "applicant for admission" under § 1225(a)(1) and does not explore how this history relates to § 1226 at all. *See generally id*. And this reading misses the parenthetical in *Torres* exploring the legislative intent. *See id.* (citing H.R. Rep. 104-469, pt. 1, at 225 (explaining that § 1225(a)(1) "[wa]s intended to replace certain aspects of the current *'entry doctrine,'* under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry") (emphasis added). Thus, neither *Torres* nor *Hurtado* alters the analysis here.

Not to mention, for decades, the Government applied § 1226(a) to people like Petitioner who had already been in the country. *See* ECF No. 1 at PageID.3. "[T]he longstanding 'practice of the government'"—like any other interpretive aid—"can inform [a court's] determination of 'what the law is.'" *Loper Bright Enters.*, 603 U.S. at 386 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)).

> The court in *Pizarro Reyes* also noted this longstanding practice:
>
> When the IIRIRA passed, EOIR drafted new regulations that provided: "[a]liens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). *For almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception*…Accordingly, the Respondents' proposed statutory interpretation does not align with the executive branch's contemporaneous guidance when the IIRIA passed or with the expectations the guidance established.

*Pizarro Reyes*, 2025 WL 2609425, at *8 (emphasis added).

Respondent argues that DHS has always interpreted the scope of §1225(b)(2) to apply to noncitizens like Petitioner, and only recently changed its discretion to apply it after the BIA's recent

decision in *In re Q. Li.*, in which the BIA held that noncitizens who fall under the scope of 8 U.S.C. §1225(b)(1), governing arriving aliens, must be detained under that section and are "ineligible for any subsequent release on bond under . . . §1225(a)." 29 I. & N. Dec. 66, 69 (BIA 2025); *see* ECF No. 4 at PageID.56. Respondent argues that, because the BIA's *In re Q. Li*. decision would "naturally extend to §1225(b)(2)," DHS issued a new policy instructing its employees to comply with the new binding authority. ECF No. 4 at PageID.56. But one, there is no dispute that this Court is not bound by the BIA's interpretation of how §1225(b)(2)(A) applies to Petitioner. *See Loper Bright Enters.*, 603 U.S. at 413.

And two, Respondent's arguments that there is no evidence that DHS interpreted the scope of §1225(b)(2) differently in the past are contradicted by the record. In fact, the way DHS acted upon his detention gives credence to Petitioner's assertion that § 1226 historically applies to people like him. Indeed, DHS issued an I-200 form for Petitioner's arrest, which derives its authority from 8 U.S.C. § 1226, and not from §1225(b)(2)(A). ECF No. 5 at PageID.102. And Respondent's proposed statutory interpretation is so novel that, when filling out Petitioner's Notice to Appear paperwork, the Respondent checked the box entitled "you are an alien present in the United States who has *not been admitted* or paroled," when there was another box stating "you are an *arriving alien*" that could have been checked. ECF No. 5-1 at PageID.109 (emphasis added).

Lastly, this Court's conclusion aligns with nearly every other court that has addressed this same issue after the DHS changed its guidance. *See, e.g.*, *Gomes*, 2025 WL 1869299, at *5–6; *Rodriguez*, 779 F. Supp. 3d at 1255–60; *Vasquez Garcia v. Noem*, No. 25-cv-02180 (S.D. Ca. Sept. 3, 2025); *Pizarro Reyes*, 2025 WL 2609425; *Lopez-Campos*, 2025 WL 2496379; *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR,

2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado*, 2025 WL 2374411; *Romero v. Hyde, et al.*, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *but see Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025).

In the end, the Petition, ECF No. 1, will be granted. And because this Court will grant the relief Petitioner seeks regarding the applicability of § 1226 to his detention, it need not address his Due Process claim. But if Respondent does not provide Petitioner with a bond redetermination hearing or release him within the allotted time, he may renew that claim.

IV.

Accordingly, it is **ORDERED** that all Respondents except for Acting ICE Field Office Director Kevin Raycraft are **DISMISSED**.

Further, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED.**

Further, it is **ORDERED** that Respondent is **DIRECTED** to provide Petitioner with a bond hearing under § 1226(a) within **seven days** of this order or otherwise release him.

**This is a final order and closes the case.**

Dated: October 21, 2025                                s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge